1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNIVERSAL PROTECTION SERVICE, LP d/b/a ALLIED UNIVERSAL SECURITY SERVICES; and UNIVERSAL PROTECTION SECURITY SYSTEMS, LP,

Plaintiffs,

v.

COASTAL FIRE AND INTEGRATION SYSTEMS, INC; DENNIS DON STOVER, JR.; GARY HUTCHESON; and DOES 1-5, inclusive,

Defendants.

Case No.:  22-cv-1352-JES-KSC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

**[ECF No. 15]**

On October 25, 2022, Defendants filed a motion to dismiss counts 1, 2, and 8 of Plaintiffs' First Amended Complaint ("FAC"). ECF No. 15. On November 15, 2022, Plaintiffs filed an opposition. ECF No. 17.  On November 22, 2022, Defendants filed a reply.  ECF No. 21. The matter was taken under submission. After due consideration and for the reasons discussed below, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

//

1

# I.     BACKGROUND

On September 8, 2022, Plaintiffs Universal Protection Service LP, doing business as Allied Universal Security Services, and Universal Protection Security Systems, LP (collectively, "Allied Universal") instituted this lawsuit against Defendants Coastal Fire and Integration Systems, Inc. ("Coastal Fire"), Don Stover, Jr. ("Stover"), and Gary Hutcheson ("Hutcheson"). ECF No. 1. On October 4, 2022, Allied Universal filed their FAC, the operative complaint, alleging facts as follows. ECF No. 14 ("FAC").

Allied Universal is a security services company operating in North America. FAC ¶ 13. Part of the services that it provides through one of its divisions is electronic access control, video surveillance, fire/life safety, alarm monitoring, emergency communications, and hosted/managed services. *Id.* ¶ 17. In building up its brand, Allied Universal owns several trademarks, including the following six trademarks:

- No. 5,136,006: the mark Allied Universal, filed May 6, 2016 and issued February 7, 2017; (*id.* ¶ 20)

- No. 5,302,678: the mark Allied Universal and Design as shown below, filed on June 24, 2016 and issued October 3, 2017; (*id.* ¶ 21)



- No. 5,136,112: the mark Allied Universal Security Services, filed on May 26, 2016 and issued February 7, 2017; (*id.* ¶ 22)

- No. 5,150,269: the mark "Allied Universal Security Services and Design as shown below, filed on June 30, 2016 and issued February 28, 2017; (*id.* ¶ 23)



- No. 5,146,530: the mark Allied Universal there for you and Design as shown below, filed on July 18, 2016 and issued February 21, 2017; (*id.* ¶ 24)



- No. 5,136,162: the mark Allied Universal Security Systems, filed on May 31, 2016 and issued on February 7, 2017 (*id.* ¶ 25).

In addition, Allied Universal owns several copyrights. One of its divisions uses computer-assisted drafting (AutoCAD) to prepare engineering designs of its services. *Id.* ¶ 56. To facilitate this, Allied Universal developed custom AutoCAD templates, which are drawings that contained components unique to Allied Universal. Two of these templates are at issue here and are copyrighted:

- 2017 Technical Drawing; (*id.* ¶ 33, Exh. A)
- 2021 Technical Drawing (*id.* ¶ 34, Exh. B).

In addition, Allied Universal developed Quote Builder, which it used to prepare and present estimates and generate proposal of its designs and services, and is also copyrighted:

- Quote Builder (*id.* ¶ 35, Exh. C).

On May 30, 2014, Allied Universal acquired City-Wide Electronic Systems, Inc. ("City-wide"), another security services company. *Id.* ¶ 40. At that time, Defendant Stover was City-wide's President and Defendant Hutcheson was a System Engineer at City-wide.  *Id.* ¶ 41. After the acquisition, Stover continued to serve as Executive Vice President at Allied Universal until June 1, 2020 and Hutcheson in Systems Estimating and Engineering until November 2020. *Id.* ¶¶ 42-43. Allied Universal alleges that during their employment, both defendants executed agreements that prohibited them from disclosing confidential information and required them to return Allied Universal's property upon termination. *Id.* ¶¶ 44-48, Exhs. D, E.

Allied Universal alleges that after the sale and during defendants' subsequent employment, Stover and Hutcheson directly competed with Allied Universal through their own company.  *Id.* at ¶ 50. On June 13, 2014, Allied Universal alleges that Stover's wife established and incorporated One-Eight, Inc., which later changed its name to Coastal Fire and Integration Systems, the other named defendant in this lawsuit. *Id.* ¶¶ 49, 51. Allied Universal alleges that Stover and Coastal Fire recruited Hutcheson and other employees to perform "side work" for them of the exact or similar nature of what they did for Allied Universal.  *Id.* ¶ 53-55. Specifically, Allied Universal alleges that in June 2022, it received a request for bid from an apartment complex in Los Angeles that was looking to install a security system. *Id.* ¶ 59. Allied Universal alleges that Coastal Fire had previously provided services for the same client and during the course of that work, prepared and submitted an AutoCAD design. *Id.* ¶ 60. Allied Universal states that when it received the June 2022 bid materials, the previous design from Coastal Fire (hereinafter, "Coastal Fire design drawing") was included in the materials and bore the initials "GWH," which stood for Defendant Hutcheson. *Id.* ¶ 61. Allied Universal alleges that the Coastal Fire design drawing infringes on its copyrighted 2017 and 2021 Technical Drawings, and that text on the design drawing infringes on its trademarks.

Based on the facts above, Allied Universal alleges nine causes of action including trademark infringement, copyright infringement, violation of the Computer Fraud and Abuse Act, unfair competition, and various breaches of contractual obligations. *Id.* at ¶¶ 73-138.

## II.   LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual

allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

### III.   DISCUSSION

In the instant motion, Defendants move to dismiss three causes of action: (1) first cause of action for trademark infringement; (2) second cause of action under the Computer Fraud and Abuse Act; and (3) eighth cause of action for copyright infringement. The Court will address each of these in turn.

#### A.   Trademark Infringement

In the first cause of action, Plaintiffs allege that Defendants used its registered trademarks without permission. FAC ¶¶ 73-84. In order to state a claim for trademark infringement, a plaintiff must show that (1) it has a valid, protectable trademark, and (2) that the defendant is using the mark in a way that is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

As to the first part of this test, Defendants do not appear to contest that Plaintiffs have valid marks. Indeed, Plaintiffs' FAC includes detailed allegations regarding each of its six marks and provides registration information, numbers, and dates for each of the trademarks. FAC ¶¶ 20-25. Registration of a trademark with the United States Patent and Trademark Office endows it with a rebuttable presumption of validity. 15 U.S.C. § 1115(a) (registration is "prima facie evidence of the validity of the registered mark . . . , of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005). Rather, Defendants argue that Plaintiffs have failed to allege "use" of the marks and that there was any likelihood of consumer confusion.

### i.    Defendants' Use of the Marks

Plaintiffs' allegation of trademark infringement center around the following General Disclaimer text that was on the Coastal Fire design drawing:



ALLIED UNIVERSAL SECURITY SYSTEMS GENERAL DISCLAIMER:

THESE DRAWINGS WERE PREPARED BY ALLIED UNIVERSAL SECURITY SYSTEMS (A.U.S.S.) FOR THIS PROJECT ONLY AND ARE INSTRUMENTS OF A.U.S.S. FOR USE SOLELY BY A.U.S.S. IN THE INSTALLATION OF WORK COVERED BY THESE DRAWINGS. A.U.S.S. SHALL BE DEEMED THE AUTHOR OF THESE DRAWINGS AND SHALL RETAIN ALL COMMON LAWS, STATUTORY AND OTHER RESERVED RIGHTS, INCLUDING BUT NOT LIMITED TO COPYRIGHTS. THESE DRAWINGS SHALL NOT BE REPRODUCED IN ANY WAY OR USED FOR ANY PURPOSE BY ANYONE OTHER THAN A.U.S.S. EXCEPT WITH A.U.S.S.'S EXPRESSED WRITTEN PERMISSION. ALL INFORMATION INCLUDED BUT NOT LIMITED TO THE "DESIGN METHODS", "PHILOSOPHIES", CREATED BY A.U.S.S. ON THESE DRAWINGS ARE CONSIDERED TO BE INTELLECTUAL PROPERTY (TRADE SECRET). RELEASE BY A.U.S.S. OF THE RIGHT TO USE THESE PLANS TO OTHERS DOES NOT RELEASE THIS INFORMATION FOR USE BY OTHERS ON OTHER DRAWINGS. A.U.S.S. DOES HEREBY AUTHORIZE THE AHJ TO USE THESE PLANS IN THE ADMINISTRATION OF THEIR RESPECTIVE DUTIES.

FAC at 69. As shown above, the text includes the terms "Allied Universal" and "Allied Universal Security Systems." Thus, Plaintiffs argue in their opposition that the use of these terms in this disclaimer breaches their "Allied Universal Word Marks," which are defined to include the "Allied Universal" and "Allied Universal Security Systems" marks. ECF No. 17 at 10-11.

Defendants repeatedly state in their motion to dismiss and reply brief that there are three trademarks at issue and that the disclaimer shown above does not use of these trademarks. ECF No. 15-1 at 11-14. In these references, Defendants appear to be

referring to the design trademarks only. *Id.* at 15-1 at 12 (citing the FAC ¶¶ 6, 8, 11, 12, which contain allegations related to the design trademarks). Plaintiffs respond that Defendants inexplicably are limiting their discussion of the trademarks to the *design* trademarks and wholly ignoring the *word* trademarks. ECF No. 17 at 11-12. In the reply brief, Defendants continue to only reference three trademarks. ECF No. 21 at 4-5.

A review of the FAC shows that it does include both word trademarks (*see* FAC ¶¶ 20, 22, 25) and design trademarks (*see* FAC ¶¶ 21, 23, 24). A word trademark versus a design trademark differs in that a word trademark has no design elements. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128 (9th Cir. 2014); *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1355 (E.D. Cal. 2019). For example, Plaintiffs have alleged that they own a word trademark in "Allied Universal," and the registration is for a "standard character mark" that consists of "standard characters without claim to any particular font style, size, or color."[1] FAC ¶ 20; *see* https://tsdr.uspto.gov/#caseNumber=5,136,006&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited June 1, 2023). In contrast, Plaintiffs also have alleged that they own a design trademark in the mark Allied Universal and design. FAC ¶ 21. This trademark registration is for an "illustration drawing which includes words/letters/numbers" and is described as consisting of "the word 'ALLIED' on top of 'UNIVERSAL' with an arc design to the left of the 'A' in 'ALLIED' and the 'U' in 'UNIVERSAL' and going through 'ALLIED.'" *See* https://tsdr.uspto.gov/#caseNumber=5,302,678&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited June 1, 2023).

---

[1] The Court takes judicial notice of the registrations of the trademarks at issue. Federal Rule of Civil Procedure 201 permits a court to take judicial notice on its own regarding any facts that is "not subject to reasonable dispute" where it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P 201(c)(1), (b)(2). Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.") (citations omitted).

As plainly seen from the design disclaimer shown above, the disclaimer includes the terms "Allied Universal" and "Allied Universal Security Systems." These are word trademarks that have been alleged by Plaintiffs. FAC ¶¶ 20, 25. Defendants' motion and reply briefs do not give any argument as to why the FAC fails to allege "use" of these work marks. However, the disclaimer does not use the word mark "Allied Universal Security Services," nor does the disclaimer include any use of the design marks alleged in the complaint. The complaint does not include any other factual allegations as to how Defendants may have infringed those trademarks, other than from the disclaimer in the Coastal Fire design drawing. Indeed, Plaintiffs only reference the above mentioned two word marks in their opposition brief as well. Thus, the Court finds that the complaint has only sufficiently alleged use of the two word marks "Allied Universal" and "Allied Universal Security Systems."

### ii. Likelihood of Confusion

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Medica, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). Likelihood of confusion is evaluated using an eight-part test that is "predominantly factual in nature." *Id.* These factors, known as the *Sleekcraft* factors, include (1) the strength of the mark; (2) the relatedness or proximity of the goods or services; (3) the similarity of the marks; (4) the evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion in product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

This fact extensive inquiry is often not appropriate at the motion to dismiss stage. *See, e.g.*, *RCRV, Inc. v. Gracing Inc.*, No. CV 16-2829-R, 2016 WL 11000048, at *2 (C.D. Cal. July 20, 2016) ("Many courts have held that the likelihood of consumer confusion is not appropriate to determine at the motion to dismiss stage."); *Lucent Techs.*

*v. Johnson*, 2000 WL 1604055, at *2 (C.D. Cal. 2000) ("[T]he likelihood of confusion inquiry is a fact-intensive evaluation ill-suited for disposition on a motion to dismiss."); *Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*, No. CVF08-0959LJODLB, 2008 WL 4723603, at *6 (E.D. Cal. Oct. 24, 2008). Courts have granted dismissal at the pleading stage on likelihood of confusion, but only in limited circumstances. *Mastro's Restaurants LLC v. Dominick Grp. LLC*, No. CV 11-1996-PHX-PGR, 2012 WL 2091535, at *7 (D. Ariz. June 11, 2012) ("A dismissal on the pleadings because a likelihood of confusion is impossible from the face of the Complaint is highly unusual, but not unheard of.") (citing *McCarthy on Trademarks and Unfair Competition* § 32:121.25). For example, dismissal may be granted where the parties' goods are not related. *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996), *as amended* (Aug. 6, 1996) (affirming district court's dismissal where "the parties' services are unrelated and there is no likelihood of confusion); *Robinson v. Hunger Free Am., Inc.*, No. 118CV00042LJOBAM, 2018 WL 1305722, at *4 (E.D. Cal. Mar. 13, 2018) (dismissing trademark infringement claim where the types of goods utilizing the mark were dissimilar). Dismissal may also be granted if the parties' respective geographical locations prevent a finding of confusion, or where the defendant has specifically disclaimed any affiliation with the plaintiff's goods and services. *Mastro's Restaurants LLC*, 2012 WL 2091535, at *7 (collecting cases).

Defendants argue that Plaintiffs have not sufficiently alleged likelihood of confusion, nor could they, since the apartment complex included the allegedly infringing Coastal Fire design drawing in a solicitation for a bid to Plaintiffs, clearly showing that the apartment complex did not select to give the business to Defendants and that they were not confusing Plaintiffs with Defendants. ECF No. 15-1 at 14; ECF No. 21 at 5. Plaintiffs counter that they sufficiently alleged that Defendants' use was "confusingly similar in sound, appearance, and overall commercial impression" to its marks and the use was "likely to cause consumer confusion." FAC ¶¶ 77-78. Further, Plaintiffs also argue that likelihood of confusion can also be established if a consumer may purchase a

defendant's services under the mistaken belief that the defendant is associated with the trademark's owner when they are not. ECF No. 17 at 12.

Plaintiffs' FAC includes the following allegations related to likelihood of confusion: that Defendants are using the trademarks in the disclaimer in connection with identical goods and services; that the disclaimer is "confusingly similar in sound, appearance, and overall commercial impression" to Plaintiffs' marks; that the use is likely to cause consumer confusion; and that the use has caused Plaintiffs damage to their business, reputation and goodwill. FAC ¶¶ 76-81. The Court finds that these allegations as to likelihood of confusion are sufficient to survive a motion to dismiss. Defendants are alleged to have used the word trademarks in connection with the exact services that Plaintiffs provide, from the same consumer. Likelihood of confusion also encompasses the situation where a consumer is led to wrongly believe that the defendant is affiliated, endorsed by, or sponsored by the plaintiff through use of the plaintiff's trademark. *See KEMA, Inc. Koperwhats*, No. C 09-1587 MMC, 2010 WL 11417911, at *3 (N.D. Cal. Sept. 1, 2010); *Facebook, Inc. v. Power Ventures, Inc.*, 2009 WL 1299698 (N.D. Cal. May 11, 2009); *see also Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir.2010) (noting false suggestion of sponsorship or endorsement by trademark holder "speaks directly to the risk of [consumer] confusion"). Moreover, the circumstances where courts in this district have found it appropriate to grant a motion to dismiss on likelihood of confusion (*i.e.*, unrelated goods, dissimilar geographic regions, and express disclaimer of no relation) are not present here.

Defendants' arguments against likelihood of confusion are relevant to certain factors in the *Sleekcraft* inquiry, but are factual arguments not appropriate at this juncture. For example, Defendants argue that there was no actual confusion because the apartment complex did not give business to Defendants. Actual confusion is one of the *Sleekcraft* factors, but it is not dispositive or necessary. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("[A]ctual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act.") (quoting

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991)); *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1216–17 (9th Cir. 2012) (noting that actionable confusion does not solely arise from confusion of consumers that could cause a direct loss of sale). Defendants also argue that the use of the disclaimer "erroneous" and an "inadvertent one-time error." ECF No. 15-1 at 14. Intent to use a mark to confuse consumers is a *Sleekcraft* factor but it is similarly not required to find trademark infringement. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (noting that intent to confuse consumers is not required to find infringement but may be strong evidence of likelihood of confusion). Thus, while Defendants' arguments are well-taken, they go to the factual-intensive inquiry of likelihood of confusion and are not sufficient to permit a dismissal at the motion to dismiss stage.

Because Plaintiffs have plausibly pled both elements of a trademark infringement claim—that they have valid, protectable trademarks and there is likelihood of confusion—on its word trademarks "Allied Universal" and "Allied Universal Security Systems," Defendants' motion to dismiss is **DENIED** as to this claim on those marks. The motion to dismiss the trademark infringement claim as to the three design trademarks and the word trademark for "Allied Universal Security Services" is **GRANTED** because the FAC fails to allege use of these marks by Defendants.

### B. Violation of Computer Fraud and Abuse Act

In the second cause of action, Plaintiffs alleged that Defendants have violated various provisions of the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. This statute was originally enacted to "enhance the government's ability to prosecute computer crimes" and is designed to "target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009). The CFAA is primarily a criminal statute, but includes a private civil cause of action:

"Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Specifically, Plaintiffs alleged violations of the followings subsections:

> **18 U.S.C. § 1030(a)(2)(C)**:  "whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . (C) information from any protected computer;"

> **18 U.S.C. § 1030(a)(4)**:  "whoever . . . knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;"

> **18 U.S.C. § 1030(a)(5)(C)**:  "whoever . . . intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss."

FAC ¶¶ 86-89. In addition, in order to establish civil liability, the conduct must also "involve[] 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). The factor that has been alleged by Plaintiffs in the FAC is in 18 U.S.C. § 1030(c)(4)(A)(i)(I), requiring "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value. FAC ¶ 91.

### i.    Protected Computer

The violations alleged by Plaintiffs all require accessing a "protected computer." The CFAA defines the term "protected computer" as follows:

> "a computer . . . which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States."

18 U.S.C. § 1030(e)(2)(B).[2] Plaintiffs allege in the FAC that Defendants violated the CFAA by accessing "a computer used for interstate commerce or communication" and that the Allied Universal computer system accessed by Defendants "is a 'protected computer' as the term is used in 18 U.S.C. § 1030(e)(2)." FAC ¶¶ 86, 90. Defendants argue that the FAC fails to allege any facts to support this contention. ECF No. 15-1 at 16.

The Court agrees that the FAC only contains conclusory statements as to how the computer that Defendants allegedly used to violate the CFAA are "protected computers." *See Connelly v. Blacksexfinder Corp.*, No. SACV1501255CJCJCGX, 2017 WL 11635875, at *2 (C.D. Cal. Sept. 12, 2017) (finding that the allegation that "Plaintiffs' computers are protected computers . . . in that they are used in and affect interstate commerce and communication" was too conclusory and insufficient to satisfy Rule 8) (citing *Ashcroft*, 556 U.S. at 662). Even looking beyond these specific allegations regarding how the computer may qualify as "protected," a review of the other factual allegations in the FAC fails to reveal any other facts that the Court may use to infer that the computer was used in interstate commerce. *See, e.g.*, *Merritt Hawkins & Assocs., LLC v. Gresham*, 948 F. Supp. 2d 671, 674 (N.D. Tex. 2013) (courts may reasonably infer from other factual allegations that the accessed computer was used in interstate commerce, and is therefore "protected").

### ii.     18 U.S.C. §§ 1030(a)(2)(C), (a)(4)

These two sections both require a showing that Defendants accessed the protected computer "without authorization" or "exceeds authorized access." 18 U.S.C. §§ 1030(a)(2)(C), (a)(4). In a series of two cases, the Ninth Circuit has established the

---

[2] 18 U.S.C. § 1030(e)(2) also includes additional definitions of a "protected computer" to includes computers exclusively for the use of financial institutions, the United States Government, or as part of a voting system, but the section alleged by Plaintiffs in the FAC relate to interstate commerce. FAC ¶ 86; *see* 18 U.S.C. § 1030(e)(2)(A), (C).

bounds of what "without authorization" and "exceeds authorized access" means under these sections.

First, in *Brekka*, the defendant was employed by plaintiff and was alleged to have emailed himself company documents during the course of his employment, and after his employment ended, alleged to have continued to access plaintiff's computer systems. 581 F.3d at 1129-31. The *Brekka* plaintiff sued under 18 U.S.C. §§ 1030(a)(2), (a)(4). The Ninth Circuit held that a person accesses a computer "without authorization" under the CFAA where a person "accesses a computer without any permission at all," whereas a person "exceeds authorized access" where the person "has permission to access the computer, but accesses information on the computer that the person is not entitled to access." *Id.* at 1133. Applying these definitions, the court found that if it could be shown factually that Brekka accessed plaintiff's computers after his employment ended, this would have satisfied the requirement that he accessed the computers "without" authorization. *Id.* at 1136. In contrast, however, Brekka emailing himself company documents while he was employed did not "exceed" authorization because he was authorized to access the company's computers and the documents during his employment, and so was not actionable under sections (a)(2) and (a)(4). *Id.* at 1135.

The employee and employer in *Brekka* did not have a written employment agreement, and the company did not have any employee guidelines that would have explicitly prohibited the employee from emailing himself company documents to personal computers. *Id.* at 1129. The Ninth Circuit next addressed what it means to "exceed authorized access" in a situation where the defendant *did* violate guidelines by his access. *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) (en banc). In *Nosal*, the defendant, after leaving the company, convinced his former colleagues who were still current employees to use "their log-in credentials to download source lists, names and contact information from a confidential database on the company's computer" and share the documents with Nosal. *Id.* at 856. The employees were authorized to access the information but the company had a policy that prohibited them from disclosing

confidential information. *Id.* Nosal was charged with violation of 18 U.S.C. § 1030(a)(4) for aiding and abetting the current employees in "exceeding" their authorized access. *Id.* Nosal argued that "exceeds authorized access" referred to "someone who's authorized to access only certain data or files but accesses unauthorized data or files." *Id.* at 857 (giving the example of where an employee is permitted to access product information on a company computer but accesses customer lists). The government, on the other hand, argued that "exceeds authorized access" referred to "someone who has unrestricted physical access to a computer, but is limited in the use to which he can put the information." *Id.* (giving the example of where an employee may be authorized to access customer lists in order to do his job, but not to send them to a competitor). The Ninth Circuit adopted Nosal's position, finding that the government's position would "transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." *Id.* Thus, the court held that "'exceeds authorized access' in the CFAA is limited to violations of restrictions on access to information, and not restrictions on its use." *Id.* at 863-64. The court also explicitly stated that its definition is not limited to § 1030(c)(4), but anywhere else in the statute where the phrase "exceeds authorized access" is found in the statute, including § 1030(c)(2). *Id.* at 859. Applying the definition to the facts of the case, the court held that the charges failed because "Nosal's accomplices had permission to access the company database and obtain the information contained within." *Id.* at 864.

District courts within this district have applied *Brekka* and *Nosal*, holding the line between when access to a computer and files are permitted—regardless of what actions are taken with the retrieved information thereafter—and when access to a computer and files are not permitted. For example, in *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580, at *5 (N.D. Cal. Dec. 3, 2012), the court found no violation under §1030(a)(2)(C) or § 1030(a)(4) where the FAC did not allege that defendant accessed plaintiff's website without authorization, but only that the access was "for the ostensibly improper 'purpose' of using its authorized access to provide support services to third parties." The court held that squarely fell within *Nosal*'s holding: "using

legitimate access credentials to access websites and then distributing information

obtained from such access to third parties who have no right to receive such

information." *Id.* In contrast, courts have allowed cases to proceed under these sections of

the CFAA where the complaint alleged no authorized access to the computer or data.

*See, e.g.*, *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178, 1184 (N.D. Cal. 2013)

(defendant's permission to access the website had been explicitly revoked in cease-and-

desist letter); *Oracle Am., Inc. v. TERiX Computer Co., Inc.*, No. 5:13-CV-03385-PSG,

2014 WL 31344, at *7 (N.D. Cal. Jan. 3, 2014) (defendants were alleged to "have no

access rights whatsoever and yet proceeded to login to Oracle's secure support website

anyway").

      Here, a review of the FAC reveals that the facts pled fall squarely within *Nosal* as

misappropriation claims. Plaintiffs allege that they had executed agreements with both

Defendant Stover and Defendant Hutcheson during their employment that governed their

receipt, use, and disclosure of confidential and proprietary information, including

prohibiting each from disclosing confidential information and returning company

property when requested. FAC ¶¶ 44-48. Plaintiffs allege that during Defendants'

employment, they engaged in "side work" of the same nature for a competing company.

FAC ¶¶ 49-53. Plaintiffs allege that Defendants "had access" to the 2017 and 2021

Technical drawings while employed by Allied Universal. FAC ¶ 57. Plaintiffs then allege

that Defendants created an infringing drawing based on these two drawings. FAC ¶¶ 60-

64. Taken together, these allegations do not establish that Defendants did not have

permission to access the computer systems when the access occurred or that they did not

have the right to access the files during the course of their employment. Rather,

Plaintiffs' allegations of misconduct center around Defendants' subsequent *use* of the

files they accessed, which are alleged to be in violation of their employment agreements

and trademark and copyright infringement. But, these are precisely the restrictions on

"use" of information appropriately accessed in the first place that cannot be the basis of a

CFAA under *Nosal*. The complaint includes no other mention of potential access by

Defendants of Allied Universal's computer systems, either during their employment or afterwards. Thus, the Court finds that Plaintiffs failed to adequately plead causes of action under either 18 U.S.C. § 1030(a)(2)(C) or § 1030(a)(4) for this reason as well.

### ii.    18 U.S.C. §§ 1030(a)(5)

Unlike the previous two sections, under § 1030(a)(5), access to the protected computer must be "without authorization" and such conduct must cause "damage and loss." The requirement for "without authorization" is problematic for the same reasons discussed above—the FAC is devoid of any facts suggesting that Defendants accessed Plaintiffs' computer systems outside their employment or without permitted access.

Moreover, the "damage" that is required under this section of the CFAA is narrow. Section 1030(e)(8) of the CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." Courts have interpreted this term to be limited to "damage" in the form of "harm to computers or networks, not economic harm due to the commercial value of the data itself." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) (collecting cases); *see also Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13–cv–00784, 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013) ("Indeed, a number of courts have noted that 'costs not related to computer impairment or computer damages are not compensable under the CFAA.'") (citation omitted). In *NetApp*, plaintiff only alleged that defendant "accessed its databases without permission, not that he damaged any systems or destroyed any data." *NetApp*, 41 F. Supp. 3d at 834. The court concluded that "damage" was inadequately pled because the complaint only alleged "harm to the integrity of its data, programs, and computer system" and dismissed the claim. *Id.*

Unfortunately for Plaintiffs, the FAC fares no better. Plaintiffs only allege that they suffered "damage and loss" in the form of "harm to Allied Universal's data, programs, and computer system and other losses and damage." FAC ¶ 91. Plaintiff fails to factually allege what damages its actual computers or computer systems or computer networks suffered as a result of Defendants' access. Allegations of any damages related to the

value of data that might have been taken, competitive harm in the form of lost business, or lost revenue from misappropriation claims cannot form the basis of "damage" under this section. *NetApp*, 41 F. Supp. 3d at 834.

Thus, the Court finds that Plaintiffs fail to adequately plead a cause of action under 18 U.S.C. § 1030(a)(5) for failing to allege access "without authorization" and causing "damage" as well.

## C. Copyright Infringement

In the eighth cause of action, Plaintiffs allege that Defendants used its copyrighted materials without permission. FAC ¶¶ 124-133. Plaintiff's FAC alleges three copyrighted works at issue: 1) a Quote Builder, 2) a 2017 Technical Drawing, and 3) a 2021 Technical Drawing. FAC ¶¶ 32.

In order to state a claim for copyright infringement, a plaintiff must show: 1) ownership of the copyrighted work; and 2) that defendant copied the protected elements of the work. *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017). Copying may be shown by direct evidence or circumstantial evidence establishing that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the works. *Id.*

Plaintiffs allege that it uses a computer-aided drafting program (AutoCAD) to prepare engineering design of its services, and in order to efficiently do this, created custom AutoCAD engineering templates—which are the 2017 and 2021 Technical Drawings. FAC ¶ 56. These drawings "include symbols, formats, illustrations, layouts, blocks, icons, notes, descriptions, disclaimers, and images" which are unique to Plaintiffs. *Id.* Plaintiffs allege that Defendants had access to these Technical Drawings during the course of their employment. FAC ¶ 57. Plaintiffs also allege that the Coastal Fire design drawing received from the Los Angeles apartment complex authored by Defendants is derivative of the 2017 and 2021 Technical drawings in that it "reflects the same layout," "utilizes the same symbols and legends," "contains identical stock photos,"

and includes the disclaimer language discussed above that reference Allied Universal Security Services. FAC ¶¶ 62-63.

Based on these allegations, Plaintiffs have sufficiently alleged a cognizable claim for copyright infringement of the 2017 and 2021 Technical Drawings. As to the first factor, Plaintiffs include copyright registration certifications for the drawings. FAC ¶¶ 33, 34, Exhs. A, B. "[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The 2017 Technical Drawing is alleged to have first been published in 2017 and received the registration on September 1, 2022. FAC ¶ 33, Ex. A. The 2021 Technical Drawing is alleged to have first been published in 2021 and received the registration on August 31, 2022. FAC ¶ 34, Ex. B. This is sufficient for a *prima facie* showing that Defendants fail to rebut.  As to the second factor showing "use" by Defendants, Plaintiffs have also alleged that Defendants had access to the templates during their course of employment. FAC ¶ 57. Further, Plaintiffs have alleged that there are substantial similarities between the drawings and the allegedly infringing design. FAC ¶¶ 62-63; *see Unicolors*, 853 F.3d at 984 (copying may be shown by access coupled with substantial similarity of the general ideas and expression between the works).

Defendants argue that Plaintiffs' copyright claim must fail because the complaint fails to allege that they "used any of plaintiffs' copyrighted AutoCAD engineering templates software to create a new AutoCAD engineering template." ECF No. 15-1. Defendants contend that the templates are computer programs and that the only way they could have infringed is by creating a "new version of the existing computer program," and not by using the software to create an alleged infringing drawing. *Id.* at 18-19. Defendants argue Hutcheson used his own CAD software, obtained the General Disclaimer from the internet, and created the allegedly infringing design drawing in this manner. *Id.* at 20.

Defendants' arguments seem to be based on a misunderstanding regarding what templates in AutoCAD are and how they work. They are not software programs in the sense that they are source code. Rather, templates are custom drawings that store default settings, styles, layouts, and other data. *See* https://help.autodesk.com/view/ACD/2023/ENU/?guid=GUID-02979F86-385F-4A53-A3FB-7202F1225CDA (last visited June 7, 2023). These templates are used by companies to maintain consistent standards and styles across the organization. *Id.* Thus, they serve as a starting point for creating a drawing, and the user can then fill in and customize the template further as needed for the given project.

At least one court has found a cognizable copyright infringement claim involving similar templates. *Dtech Commc'ns, LLC v. OSC Eng'g, Inc.*, No. 11CV1425-MMA-BLM, 2013 WL 12094839 (S.D. Cal. Jan. 11, 2013). The copyrighted works there were templates used to generate reports for clients, where the templates included "fillable fields for technical specifications, customer names, addresses, GPS coordinates, and other parameters depending on the particular needs of each [report] requested." *Id.* at *1 ("The Template streamlined the process of creating EME reports at Dtech, which resulted in an EME report with a consistent format, reliable results, a reduced time to produce, and an overall increased efficiency."). On summary judgment, the court held that copying was found where defendant used the copyrighted template to create the allegedly infringing reports, and there were significant similarities between the template and the allegedly infringing reports based on wording and the "look and feel" of the documents. *Id.* at *6 (finding that many paragraphs were copied word for word or paraphrased, identical grammar mistakes occurred in the same places, headings appeared in same place, formatting was identical, and charts and tables were indistinguishable).

Plaintiffs' theory of copyright infringement alleged in the FAC with regards to the 2017 and 2021 Technical Drawings are similar.  Whether there is sufficient similarity between the templates and Defendants' Coastal Fire design drawing will be a factual

determination not appropriate on a motion to dismiss. However, the allegations are sufficient to allege a copyright claim at this stage of the proceedings.

Plaintiff's FAC does also include copyright allegations regarding its Quote Builder.[3] FAC ¶ 32 (including Quote Builder in the definition of the "Works"); ¶ 35 (discussing copyright registration to Quote Builder); ¶ 58 (discussing how Quote Builder is used to prepare and present estimates of costs and generates proposals of engineering designs); ¶¶ 124-133 (generally alleging copyright infringement of the "Works"). However, the complaint is devoid of any actual factual allegations as to how Defendants had access to Quote Builder to generate any quotes or how Defendants "copied" or otherwise used Quote Builder in a way that constitutes copyright infringement.

Accordingly, Defendants' motion to dismiss is **DENIED** as to the 2017 and 2021 Technical Drawing copyright claims. The motion to dismiss the copyright infringement claim as to the Quote Builder copyright is **GRANTED**.

## IV.    REQUEST FOR SANCTIONS

In Plaintiffs' opposition to Defendants' motion to dismiss, Plaintiffs include a request for sanctions in the form of attorney's fees for having to file a response to the motion. ECF No. 17 at 20-21. Plaintiffs argue that Defendants' motion was based on "frivolous arguments" that they "knew were legally unfounded" and were based on "unfamiliarity with intellectual property law." *Id.* at 20. Further, Plaintiffs argue that Defendants failed to meet and confer as were required by the Chambers Rules[4] and generally, for failing to respond to emails and otherwise engage with counsel in attempting to resolve the issue before a motion was filed. *Id.* at 21. Defendants respond by arguing that schedules prevented an immediate meet and confer, but that they did

---

[3] It is unclear from the FAC what Quote Builder is—whether it is a software program or application that is used to generate quotes or proposals, or whether it is another type of template that users can fill in to generate quotes or proposals.

[4] The Chambers Rules in effect at the time that Defendants filed their motion were those of Judge Linda Lopez. This case was subsequently transferred to the undersigned on March 20, 2023. ECF No. 22.

attempt to initiate a meet and confer prior to the motion.  ECF No. 21 at 8-9. Defendants further argue that their motion is not groundless for the reasons stated in their motion and reply brief. *Id.* at 9.

The Court has the inherent power to impose sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). However, the Court's "inherent powers must be exercised with restraint and discretion." *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, at *4, 2004 U.S. Dist. LEXIS 16835, at *12 (N.D. Cal. Aug. 17, 2004) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)). Exercising its sound discretion, the Court declines to impose sanctions here. As outlined above, the Court is granting in part some of Defendants' motion to dismiss. Under these circumstances, not all of Defendants' arguments were groundless and the conduct does not warrant sanctions. Thus, Plaintiff's request for sanctions is **DENIED**.

## V.    CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss as summarized below:

1) Defendants' motion to dismiss Plaintiffs' trademark infringement claim as to the word trademarks "Allied Universal" and "Allied Universal Security Systems" is **DENIED**. The motion to dismiss the trademark infringement claim as to the three design trademarks and the word trademark for "Allied Universal Security Services" is **GRANTED**.

2) Defendants' motion to dismiss Plaintiffs' claim under the Computer Fraud and Abuse Act is **GRANTED**.

3) Defendants' motion to dismiss Plaintiffs' copyright infringement claim as to the 2017 and 2021 Technical drawings is **DENIED**. The motion to dismiss the copyright infringement claim as to the Quote Builder copyright is **GRANTED**.

Plaintiffs are permitted to file an amended complaint if they wish to cure the deficiencies in these causes of action **within 30 days of this order**. If Plaintiff fails to file an amended

complaint by that deadline, Defendant must respond to the new amended complaint **within 14 days of that deadline**. Plaintiffs' request for sanctions against Defendants is **DENIED**.

    **IT IS SO ORDERED.**

Dated:  June 15, 2023

_____
Honorable James E. Simmons, Jr.
Unites States District Judge